MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:  JOSEPH A. PANTOJA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. No.:  (212) 637-2785
Fax No.:  (212) 637-2750
Email: joseph.pantoja@usdoj.gov

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :

UNITED STATES OF AMERICA,      :

           :

         Plaintiff,    :

           :

     v.       :

           :

CITY OF MIDDLETOWN, NEW YORK,  :

           :

       Defendant.  :

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF CASE

No. 08 Civ. 6369 (SCR)(LMS)

**NOTICE OF LODGING OF
PROPOSED CONSENT DECREE**

       The United States of America is hereby lodging with the Court the proposed

Consent Decree ("Consent Decree") attached hereto as Exhibit A.

       The United States requests that the Court not enter the Consent Decree at this

time.  Rather, pursuant to 28 C.F.R. § 50.7, notice of the lodging of the Consent Decree will be

published in the Federal Register, following which the United States Department of Justice will

receive public comments on the Consent Decree for a 30-day period.  After the conclusion of the

comment period, the United States will file with the Court any comments received, as well as

responses to the comments, and at that time, if appropriate, will request the Court to approve and

enter the Consent Decree.

Dated:  New York, New York
       July 16, 2008

                      MICHAEL J. GARCIA
                      United States Attorney for the
                      Southern District of New York
                      Attorney for the United States of America

By:    _/s/ Joseph A. Pantoja_____
                      JOSEPH A. PANTOJA
                      Assistant U.S. Attorney
                      86 Chambers Street, 3rd Floor
                      New York, New York  10007
                      Tel. No.: (212) 637-2785
                      Fax No.:  (212) 637-2750

To:    By Federal Express
       Alex Smith, Esq.
       Corporation Counsel
       City of Middletown, New York
       16 James Street
       Middletown, NY 10940
       *Counsel for Defendant*

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:  JOSEPH A. PANTOJA
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Tel. No.:  (212) 637-2785
Fax No.:  (212) 637-2750

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :          ECF CASE
                                             :
                        Plaintiff,           :          08 Civ. _6369_ (SCR)
                                             :
            v.                               :          <u>CONSENT DECREE</u>
                                             :
THE CITY OF MIDDLETOWN, NEW YORK,            :
                                             :
                        Defendant.           :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

        WHEREAS, plaintiff, the United States of America ("United States"), on behalf of the

United States Environmental Protection Agency ("EPA"), has filed a Complaint against

Defendant the City of Middletown, New York (the "City"), alleging that the City, through the

City of Middletown Water Department, has violated and continues to violate the Safe Drinking

Water Act ("SDWA"), 42 U.S.C. §300f, <u>et seq</u>., the National Primary Drinking Water

Regulations ("NPDWR") promulgated by EPA pursuant to Section 1412 of the SDWA, 42

U.S.C. § 300g-1, including the Interim Enhanced Surface Water Treatment Rule ("IESWTR"),

40 C.F.R. §§ 141.170-141.175, by (a) failing to install individual filter turbidimeters for the City

of Middletown Water Supply System, and (b) failing to comply with the February 28, 2006

deadline, set in an Administrative Order issued by EPA against the City on March 31, 2004, for

issuing a notice to proceed in connection with the construction of a full scale water treatment plant to replace the Monhagen Plant;

WHEREAS, the City is the owner and operator of the City of Middletown Water Department, a public water system that provides drinking water to approximately 26,200 customers through approximately 7,100 service connections;

WHEREAS, the City of Middletown Water Department obtains drinking water from a surface water source;

WHEREAS, the Parties intend by this Consent Decree to ensure that the City fully complies with the SDWA, the NPDWR, and the IESWTR with respect to the City of Middletown Water Supply System; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, and without trial or adjudication of any issues of fact or law, except as provided in Section I, and without this Consent Decree constituting an admission by either party with respect to any such issues, and the Court having considered the matter and being duly advised, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action and over the Parties to this Consent Decree pursuant to Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), and 28 U.S.C. §§ 1331, 1345 and 1355.  Venue in this Court is proper pursuant to 28 U.S.C. §§

1391(b) and 1395(a) because Defendant resides, conducts business, and is located in this judicial district, and the violations alleged in the Complaint are alleged to have occurred in this district.

2.     For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree, any such action, and over Defendant, and consents to venue in this judicial district.  Defendant further agrees that the Complaint states claims against the City upon which relief may be granted.

## II.  APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon the City, and any successors, assigns, or other entities or persons otherwise bound by law.

4.     No change or transfer of ownership or operation of the City of Middletown Water Department or the Water Treatment Plant ("WTP"), described in Section IV of this Consent Decree (Definitions), whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Consent Decree are implemented.  At least 30 days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 2, the United States Attorney for the Southern District of New York, and the United States Department of Justice, in accordance with Section XV of this Decree (Notices).  Any attempt to transfer ownership or operation of the WTP without complying with this Paragraph constitutes a violation of this Consent Decree.

5.     Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this

Consent Decree, as well as to any contractor and subcontractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. OBJECTIVES

7.     It is the express purpose of the Parties in entering into this Consent Decree to further the objectives of the SDWA, the NPDWR, and the IESWTR. The objective of all plans, studies, construction, and other obligations undertaken by the City pursuant to Section VII is to cause the City to be in full compliance with the SDWA, the NPDWR, the IESWTR, and all other applicable federal and state laws and regulations governing public water systems.

## IV. DEFINITIONS

8.     Unless otherwise defined herein, terms used in this Consent Decree shall have the meanings provided in the SDWA, the NPDWR, the IESWTR, and the SSC. The following definitions shall apply for the purpose of this Consent Decree:

a.     "City" shall mean defendant the City of Middletown, New York, and the City of Middletown Water Department.

b.     "Complaint" shall mean the complaint filed by the United States in this action.

c.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.

d.     "Date of entry" shall mean the date on which this Consent Decree is approved and signed by the United States District Court for the Southern District of New York.

e.  "Date of lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

f.  "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

g.  "Defendant" shall mean the City and any successors or assigns.

h.  "Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

i.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.  "IESWTR" shall mean the Interim Enhanced Surface Water Treatment Rule, 40 C.F.R. §§ 141.170-141.175.

k.  "NYSDOH" shall mean the New York State Department of Health.

l.  "Parties" shall mean the United States and the City.

m.  "Preliminary Design" shall mean documents, including drawings, developed by the City, which serve as the basis for plans and specifications for the final design and construction contract documents for the WTP.  The preliminary design shall identify the proposed WTP design capacity, storage capacity, treatment process flow diagram, and detailed process design criteria.  The preliminary design shall include drawings and criteria that define the general and spatial allowances for

architectural, structural, mechanical, heating, ventilating, air conditioning,
plumbing, electrical and other appurtenances. The preliminary design shall
include a proposed construction plan setting forth, at a minimum, the number and
scope of phases of construction contracts and their interrelationships, as well as a
proposed construction schedule.

n.   "SDWA" shall mean the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26.

o.   "Site Preparation" shall mean the first construction contract(s) or phase as
described in the preliminary design for the WTP. Site preparation shall, unless
not needed for the WTP project, include provision of temporary construction
management facilities (such as trailers, offices, fencing and site security);
construction of temporary service and access roads; site clearing and grubbing;
demolition and removal of existing structures; rough grading; and provision of
temporary electrical and other utilities.

p.   "SSC" shall mean the New York State Sanitary Code, Part 5, Subpart 5.1, 10
N.Y.C.R.R. Part 5.

q.   "Water Supply System" shall mean the public water system owned and operated
by the City.

r.   "Water Treatment Plant" or "WTP" shall mean all filtration, disinfection and
other facilities necessary for the City to be capable of providing filtered and
disinfected water from any surface water source in compliance with 40
C.F.R.§§ 141.72(b), 141.73, 141.75, 141.130-141.135, 141.170-141.175,
141.700-141.723 (collectively, "Subparts H, L, P, and W"), and applicable New
York law, including the New York State Sanitary Code, 10 N.Y.C.R.R. Part 5.

## V. CIVIL PENALTY

9.      Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $50,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of New York, 86 Chambers Street, New York, NY 10007, Tel.:  (212) 637-2708.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States of America v. City of Middletown, New York, and shall reference the civil action number and DOJ case numbers 2007V00263 and 90-5-1-1-09111, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:  EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  The City shall not deduct the civil penalty paid under this Section in calculating any federal income tax.

## VI. MEETINGS AND REVIEWS

10.     The Parties shall meet and confer, in person or by teleconference, on at least a quarterly basis following the submission of the City's quarterly reports and certifications pursuant to Section IX, unless the Parties agree, in writing, to less frequent progress meetings.

## VII.  COMPLIANCE REQUIREMENTS

11.   Long Term Measures.  The City shall implement the following Long Term Measures leading to construction and operation of the WTP in accordance with Subparts H, L, P, and W, and all other applicable federal or state law, to provide for filtration and disinfection of all water in the Water Supply System, in accordance with the following milestone events:

a.   By May 29, 2008, complete excavation for the control building and begin placement of concrete for the filter base.

b.   By June 30, 2008, complete and submit to the appropriate approval authorities all applications necessary for the WTP, other than those which, in accordance with the City's contracts, will be obtained during the course of the WTP construction by the contractors, and submit all information necessary to process the applications therewith or promptly thereafter.

c.   By October 3, 2008, complete placement of concrete for the base slab of the control building.

d.   By December 26, 2008, complete excavation for the pretreatment and chlorine contact components and begin placement of concrete for the base slabs.

e.   By March 6, 2009, complete excavation for washwater recycle component and begin placement of concrete for base slab.

f.   By November 30, 2009, complete installation of flocculator (without startup or testing).

g.   By April 1, 2010, submit a standard monitoring plan in accordance with 40 C.F.R. § 141.601, or a system specific study plan in accordance with 40 C.F.R. § 141.602 to the United States, NYSDOH and OCDOH.

h.    By April 30, 2010 secure all necessary local, state, and federal final approvals and permits for the WTP, other than those which, in accordance with the City's contracts, will be obtained during the course of the WTP construction by the contractors.

i.    By April 30, 2010, complete construction of all WTP facilities necessary for startup of the WTP and commence startup testing of the WTP.

j.    By May 31, 2010, commence operation of the WTP in compliance with the requirements set forth at 40 C.F.R. Part 141 Subparts H, L, P, and W, all NPDWR and all applicable SSC provisions, and continue to comply with all such provisions thereafter.

k.    By October 31, 2011, complete standard monitoring in accordance with 40 C.F.R. § 141.601 or a system specific study in accordance with 40 C.F.R. § 141.602, and the plan submitted under paragraph 11.g.

l.    By February 1, 2012, submit an Initial Distribution System Evaluation report in accordance with 40 C.F.R. § 141.601(c) or 40 C.F.R. § 141.602(b) to the United States, NYSDOH, and OCDOH.

m.    By October 1, 2013, comply with 40 C.F.R. Part 141, Subpart V.

12.    <u>Interim Measures</u>. The City shall comply with all public notification requirements of the IESWTR, including 40 C.F.R. §§ 141.201-210.

13.    <u>Operational Reports</u>. The City shall continue to provide monthly operational reports, as specified in 40 C.F.R. § 141.175, to EPA. The monthly reports shall be submitted to EPA, NYSDOH, and OCDOH on or before the 10th day of the following month.

14.     <u>Submission of Deliverables</u>.  Defendant shall simultaneously provide to the EPA a copy of all plans, reports, or other items that are required to be submitted pursuant to this Consent Decree.

15.     <u>Permits</u>. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

## VIII.  <u>SUPPLEMENTAL ENVIRONMENTAL PROJECT</u>

16.     Defendant shall implement a Supplemental Environmental Project ("SEP") (the "Backwash Water Recycle Project"), as described in Attachments A and B to this Decree, which are incorporated by reference as if fully set forth herein.  The SEP shall be completed by April 30, 2010.  The SEP shall provide for the recycle and reuse of filter backwash water as set forth in Attachment A.  This will provide an alternative to discharging the filter backwash water into the City's sanitary sewer system as currently done, with the anticipated result that approximately 62 million gallons of water per year will be conserved.  In implementing the SEP, Defendant shall spend not less than $490,000.00 in eligible SEP costs.  Eligible SEP costs include the costs of planning and implementing the SEP.

17.     Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  "Satisfactory completion" means that Defendant shall complete the work in accordance with all work plans and specifications for the project and shall spend not less than the amount set forth in Paragraph 16.  Defendant may use contractors or consultants in planning and implementing the SEP.

18.    With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.    that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP is $490,000;

b.    that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.    that the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.    that Defendant has not received and will not receive credit for the SEP in any other enforcement action; and

e.    that Defendant will not receive any reimbursement for any portion of the SEP from any other person.

SEP Completion Report

19.    Within 30 days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States in accordance with Section XVI of this Consent Decree (Notices). The SEP Completion Report shall contain the following information:

a.    a detailed description of the SEP as implemented;

b.   a description of any problems encountered in completing the SEP and the

solutions thereto;

c.   an itemized list of all eligible SEP costs;

d.   certification that the SEP has been fully implemented pursuant to the

provisions of this Decree; and

e.   a description of the environmental and public health benefits resulting

from implementation of the SEP (with a quantification of the benefits and

pollutant reductions, if feasible).

20.   EPA may, in its sole discretion, require information in addition to that described

in the preceding Paragraph, in order to determine the adequacy of SEP completion or eligibility

of SEP costs, and Defendant shall provide such information.

21.   After receiving the SEP Completion Report, the United States shall notify

Defendant whether or not Defendant has satisfactorily completed the SEP.  If the SEP has not

been satisfactorily completed, stipulated penalties may be assessed under Section X of the

Decree (Stipulated Penalties).

22.   Disputes concerning the performance of the SEP and the amount of eligible SEP

costs may be resolved under Section XII of this Decree (Dispute Resolution).  No other disputes

arising under this Section shall be subject to Dispute Resolution.

23.   Each submission required under this Section shall be signed by an official with

knowledge of the SEP and shall bear the certification language set forth in Paragraph 30.

24.   Any public statement, oral or written, in print, film, or other media, made by

Defendant making reference to the SEP under this Decree shall include the following language:

"This project was undertaken in connection with the settlement of an enforcement action, <u>United</u>

States v. City of Middletown, New York, taken on behalf of the U.S. Environmental Protection Agency under the Safe Drinking Water Act."

25.    For Federal Income Tax purposes, City agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## IX. REPORTING REQUIREMENTS

26.    All reports required to be submitted pursuant to this Consent Decree shall be submitted to the United States, NYSDOH, and OCDOH, as specified, at the addresses set forth in Section XVI.

27.    Within 30 days after the end of each calendar-year quarter (i.e., by January 30, April 30, July 30, and October 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XX (Termination), Defendant shall submit in writing to the United States and NYSDOH a quarterly report and certification for the preceding quarter that shall include the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state agencies; and a discussion of Defendant's progress in satisfying its obligations in connection with the backwash water recycle project under Section VIII (Supplemental Environmental Project) of this Decree including, at a minimum, a narrative description of activities undertaken; status of any construction or compliance measures, including the completion of any milestones set forth in Section VIII, and a summary of costs incurred since the previous report. If Defendant's report and certification indicates noncompliance with the Decree, the report and certification shall be submitted to the United States and NYSDOH by hand or overnight mail.

28.    With respect to the requirements of Section VII (Compliance Requirements), the report and certification required under Paragraph 30 shall detail the status and progress of the Long Term Measures required pursuant to Paragraph 11, including a description of: the work performed during the preceding three-month period; the work to be performed during the following three-month period pursuant to this Consent Decree; any noncompliance, or known or anticipated delay that may affect compliance with any milestones set forth in Paragraph 11; the cause(s) of any such delay or noncompliance and the duration of the delay; and corrective action taken or to be taken to address such noncompliance and/or to minimize the delay. The report and certification also shall identify each milestone date specified in Paragraph 11, scheduled to be completed in the quarter covered by the report and certification. For each such milestone, the report and certification shall state whether or not the City has fully met that milestone and, if not, the work remaining to be done to achieve full compliance with such milestone, and a schedule for completion of such work. If a scheduled milestone is not met, the report and certification shall state what, if any, impact there will be on compliance with the remaining milestones in Paragraph 11, and the City shall prepare and submit, within 15 business days, a plan to ensure that the schedule of milestones in Paragraph 11 are complied with to the maximum extent practicable.

29.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of the Water Supply System or the WTP, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally and by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of, or should have known of, the

14

violation or event. This procedure is in addition to the other requirements set forth in this Section.

30.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

31.    Nothing in this Section relieves Defendant of its obligation to provide the notice required by Section XI of this Consent Decree (Force Majeure).

32.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the SDWA or by any other federal, state, or local law, regulation, permit, or other requirement.

33.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.  STIPULATED PENALTIES

34.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force

Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

35.    Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per day for each day that the payment is late.

36.    Failure to Comply With Long Term Measures Milestones. If the City fails to meet any requirement of the Long Term Measures Milestones set forth in Section VII (Compliance Requirements) within the specified time frames, the City shall pay a stipulated penalty as follows, for each day for each violation:

a.    For failure to meet the milestones set forth in Paragraphs 11.a through 11.c:

| Days of Non-Compliance or Violation | Penalty per Violation Per Day |
|---|---|
| 1st to 15th day | $100 |
| 16th to 30th day | $500 |
| 31st to 60th day | $1,000 |
| 61st to 90th day | $1,500 |
| After 90 days | $3,000 |

b.    For failure to meet the milestones set forth in Paragraphs 11.e and 11.f:

| Day of Non-Compliance or Violation | Penalty per Violation Per Day |
|---|---|
| 1st to 30th day | $1,000 |
| 31st to 60th day | $5,000 |
| 61st to 90th day | $7,500 |
| After 90 days | $10,000 |

c.    For failure to meet the milestones set forth in Paragraphs 11.d and 11.g through 11.i:

| Day of Non-Compliance or Violation | Penalty per Violation Per Day |
|---|---|
| 1st to 30th day | $500 |
| 31st to 60th day | $1,500 |
| After 60 days | $3,000 |

37.     Failure to Comply With Interim Measures.  The following stipulated penalties shall accrue per violation per day for each violation of the monitoring, reporting, or public notification requirements set forth in Section VII:

| Days of Non-Compliance or Violation | Penalty per Violation Per Day |
|---|---|
| 1st to 15th day | $100 |
| 16th to 30th day | $300 |
| 31st to 60th day | $500 |
| 61st to 90th day | $750 |
| After 90 days | $1,250 |

38.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section IX of this Consent Decree (Reporting Requirements):

| Days of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 15th day | $100 |
| 16th to 30th day | $300 |
| 31st to 60th day | $500 |
| 61st to 90th day | $750 |
| After 90 days | $1,250 |

39.     Failure to Comply with SEP.  If, at any time through the day before the deadline set forth in Section VIII of this Consent Decree (Supplemental Environmental Project) for completing the SEP, Defendant fails to comply with the interim milestones in Section VII of this

Consent Decree (Compliance Requirements) for implementing the SEP, Defendant shall pay stipulated penalties for each failure to meet an applicable deadline, as follows:

| Period of Non-Compliance | Penalty per Violation Per Day |
| --- | --- |
| 1st to 14th day | $ 500 |
| 15th to 30th day | $ 1,500 |
| After 30 days | $ 3,000 |

40.   If Defendant fails to complete the SEP by the deadline set forth in Section VIII of this Consent Decree (Supplemental Environmental Project), Defendant shall pay stipulated penalties for each day for which it fails to complete the SEP, as follows:

| Period of Non-Compliance | Penalty per Violation Per Day |
| --- | --- |
| 1st to 14th day | $ 500 |
| 15th to 30th day | $ 1,500 |
| After 30 days | $ 3,000 |

41.   Except as provided in paragraphs 36 through 40, above, stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand.

42.   The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

43.   Stipulated penalties shall continue to accrue as provided in Paragraph 41 during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be

owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 45 days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

44.    <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Paragraph 11 that have occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

45.    Defendant shall pay stipulated penalties owing to the United States in accordance with the procedures set forth in Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

46.    Defendant shall not deduct stipulated penalties paid under this Section in calculating any federal income tax.

47.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

48.    Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement and Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the SDWA, the NPDWR, or the IESWTR, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI. FORCE MAJEURE

49.    A "force majeure event" is any event arising from causes beyond the control of Defendant, its contractors, or any entity controlled by Defendant that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

50.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally and by electronic or facsimile transmission to EPA, within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

51.    If the EPA agrees that a delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

52.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

53.    If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 49 and 50 above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII. DISPUTE RESOLUTION

54.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

55.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

56.    Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

57.    The United States shall serve its Statement of Position within 45 days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

58.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

59.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of the United States District Court for the Southern District of New York. Defendant may file a reply memorandum within the time period allowed under the Local Rules.

60.  Standard of Review.

a.  Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 56 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.  Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 56, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the Objectives of the Consent Decree.

61.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.  INFORMATION COLLECTION AND RETENTION

62.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any property or facility owned by the City relating to the Water Supply System at all reasonable times, upon presentation of credentials, to:

    a.    monitor the progress of activities required under this Consent Decree;

    b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

    d.    obtain documentary evidence, including photographs and similar data; and

    e.    assess Defendant's compliance with this Consent Decree.

63.    Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

64.    Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United

States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

65.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following information: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

66.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

67.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant

to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XIV.    EFFECT OF SETTLEMENT AND RESERVATIONS OF RIGHTS

68.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

69.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 68.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA, the NPDWR, the IESWTR, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 71.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Water Supply System or the WTP, whether related to the violations addressed in this Consent Decree or otherwise.

70.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 68 of this Section.

71.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the SDWA, the NPDWR, the IESWTR, or other provisions of federal, State, or local laws, regulations, or permits.

72.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

73.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

74.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

XVI. <u>NOTICES</u>

75.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To the United States</u>

AUSA Joseph A. Pantoja
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York  10007
E-mail: joseph.pantoja@usdoj.gov

Chief, Environmental Enforcement Section
Ref. #  2007V00263
U.S. Department of Justice – EES
P.O. Box 7611, Ben Franklin Sta.
Washington, D.C.  20044

    if by overnight mail:

    Chief, Environmental Enforcement Section
    Ref. #  2007V00236
    U.S. Department of Justice – EES
    1425 New York Ave., N.W., Rm. 13071
    Washington, D.C.  20005

U.S. Environmental Protection Agency, Region II
Office of Regional Counsel
Attn:  Phyllis Feinmark
290 Broadway, 16th floor
New York, New York 10007-1866
E-mail:  Feinmark.Phyllis@epamail.epa.gov

U.S. Environmental Protection Agency, Region II
Water Compliance Branch
Attn: Nicole Foley Kraft
Public Water Supply Enforcement Team
290 Broadway, 20th Floor
New York, New York  10007
E-mail:  Kraft.Nicole@epamail.epa.gov

To NYSDOH

Victor E. Pisani, Director
Bureau of Public Water Supply
New York State Department of Health
Flanigan Square
547 River Street, 4th Floor, Room 400
Troy, New York  12180-2216

To Orange County Health Department

Edwin L. Sims, P.E., Director
Bureau of Sanitary Engineering
Orange County Health Department
124 Main Street
Goshen, New York 10924-2199

To the City

Honorable Marlinda Duncanson
Mayor, City of Middletown
16 James Street
Middletown, New York 10940

Alex Smith
Corporation Counsel
City of Middletown
16 James Street
Middletown, New York 10940

Jacob S. Tawil, P.E.
Commissioner of Public Works
16 James Street
Middletown, New York 10940

76.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

77.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

78.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket, provided Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry or the Court declines to enter the Consent Decree, then the preceding requirement that Defendant perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII.  RETENTION OF JURISDICTION

79.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX. MODIFICATION

80.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by both Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 60, Defendant bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX. TERMINATION

81.     After the City has satisfactorily completed all of the compliance requirements set forth in Sections VII (Compliance Requirements); has paid the civil penalty,  any accrued stipulated penalties and all accrued interest as required by this Consent Decree; has complied with the requirements of Section VIII (Supplemental Environmental Project); and has operated the WTP and maintained continuous satisfactory compliance with all requirements of this Consent Decree, and all applicable provisions of the SDWA, the NPDWR, and the IESWTR for a period of twelve (12) consecutive months, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

82.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

83.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XII of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 60 of Section XII, until 60 days after service of its Request for Termination.

## XXI. PUBLIC PARTICIPATION

84.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII. SIGNATORIES AND SERVICE

85.    Each undersigned representative of Defendant and the United States certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

86.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII. INTEGRATION

87.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.  FINAL JUDGMENT

88.    Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and Defendant.

The Parties, by their undersigned representatives, enter into this Consent Decree in

United States v. City of Middletown, New York

Dated: Middletown, New York
        June *10*, 2008

                                CORPORATION COUNSEL
                                CITY OF MIDDLETOWN, NEW YORK
                                Attorney for Defendant

                    By:    _____
                                ALEX SMITH, ESQ.
                                16 James Street
                                Middletown, NY 10940
                                Telephone:  (845) 346-4140
                                Facsimile: (845) 346-4146
                                E-mail: asmith22@hvc.rr.com

34

Dated: New York, New York
~~June~~ , 2008
July 15

                                        MICHAEL J. GARCIA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Plaintiff

                            By:         _____
                                        JOSEPH A. PANTOJA
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, NY 10007
                                        Telephone: (212) 637-2785
                                        Facsimile: (212) 637-2750
                                        E-mail: joseph.panotja@usdoj.gov


Dated: New York, New York
June 24, 2008

                                        UNITED STATES ENVIRONMENTAL
                                        PROTECTION AGENCY, REGION 2

                            By:         _____
                                        ALAN J. STEINBERG
                                        Regional Administrator
                                        290 Broadway
                                        New York, NY 10007-1866
                                        Telephone: (212) 637-5000
                                        Facsimile: (212) 637-5024
                                        E-mail: steinberg.alan@epa.gov


Entered as a final judgment and order of this Court this 24th day of June, 2008.

Dated: Washington, D.C.
        July    , 2008

                                    ENVIRONMENT AND NATURAL
                                    RESOURCES DIVISION

                                    _Ellen Mahan_

                                    ELLEN MAHAN
                                    Deputy Section Chief
                                    Environmental Enforcement Section
                                    Environment and Natural Resources Division
                                    U.S. Department of Justice
                                    P.O. Box 7611
                                    Ben Franklin Station
                                    Washington, D.C. 20044

Entered as a final judgment and order of this Court this __ day of _____, 2008.

ATTACHMENT A
SUPPLEMENTAL ENVIRONMENTAL PROJECT
SCOPE OF WORK

Backwash Water Recycle Project - $490,000

Project Description:  The City shall implement an environmental project to collect the backwash water from the proposed WTP for recycling to the head of the WTP.  The total volume of backwash water is anticipated at 3% of the total plant production (3% of 5.5 million gallons per day = 55,000 gallons).  The backwash tank will have a capacity of at least 110,000 gallons with additional volume added as a safety factor.  The pumping capacity will be 300 gallons per minute with 100% redundancy to allow for a full holding tank volume to be recycled within six hours.  The facilities required for this project include a holding tank, backwash water pump station, piping, electrical system, and controls for the pump station.  It is anticipated that the holding tank will be below ground due to hydraulic considerations, which will likely require rock removal.

Amount to be spent: $490,000

CITY OF MIDDLETOWN, NEW YORK
WATER TREATMENT PLANT

WASHWATER RECYCLE TANK
PLANS AND SECTIONS

M-12